We have one case on the docket this morning, and we will first hear from counsel for Rebekah Gee. Ms. Murrell? Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Mandamus is extraordinary relief, but this is an extraordinary case. The district court permitted a frontal assault on an entire existing state regulatory system. I'd like to first discuss counts 1 and 5, and then discuss counts 2 and 3, because the considerations are different between the two. With regard to counts 1 and 5, the petitioners have brought a kitchen sink pleading, attacking a bundle of laws and regulations, most of which are part of a statutory and regulatory scheme that embraces different state interests, and then they tell the court to just figure out where their standing is and what the harms are that are created by this entire bundle of laws. The responsibility of the plaintiff is to identify which law is the alleged source of their harm, and this is the law that we're asking, and to tell the court which laws they are asking to be enjoined. With regard to counts 1 and 5, Mandamus is proper directing the court to dismiss those claims, and with regard to counts 2 and 3, we would ask the court, the relief that we because he had already found that the cumulative effects claim could move forward and apparently decided that it was not necessary to require more detailed pleading with regard to counts 2 and 3. If you would look at counts 1 on page 53 of the amended complaint, and count 5 on page 58 of the amended complaint, I think that the problem is very evident just from reading those two counts. And this is the amended complaint. This is the complaint that was supposed to fix the problem, but it didn't fix the problem, and even the district court judge acknowledged that it didn't really change anything, that it was still a cumulative effects challenge to an entire bundle of existing laws that he found was permissible based primarily on Hillerstadt. It doesn't fix the detail, it doesn't fix the defect because they still don't identify what in the statutory structure is causing them harm. As we all know that the complaint drives the litigation, and so everything that will happen from here on is going to be driven by the scope of the complaint and the harms that they allege occur, driving ultimately to the relief that they request. And so when you look at these counts, count 1 and count 5, and you see how broad they are, the state has no way, I mean this is a challenge, this is essentially a frontal assault on the entire, not only on the state's ability to regulate, which is fundamentally I think the initial basis of their challenges, but fundamentally challenging the state's capacity to regulate abortion entirely, which I believe is foreclosed by precedent. So I think that the intrusion and the damage to the state here is not just the monetary cost, which would be enormous. We have similar suits pending in at least six states, all three states in this circuit, that have virtually identical cumulative effects claims. They are enormous claims that have created an enormous invasion of state interests and the state's sovereign interest to regulate health facilities generally, and specifically with regard to abortion. And so I really don't think I can emphasize enough how paralyzing this would be. The Department of Health, just in Louisiana, regulates over 3,500 healthcare facilities, and they certify another 2,500. So when we're talking about, as their allegations claim, a comparison from this regulatory regime, this entire existing regulatory regime, unlike the situation in Hellerstedt, which involved a statute that applied to ambulatory surgery centers, a new regulatory regime, we're talking about a comparison to how the state regulates over almost 6,000 facilities. That's, I mean, just having to go in and deal with the invasion of the state's ability to operate and run the Department of Health and license other facilities based on the scope of this claim would be exceedingly invasive in the state's ability to carry out its sovereign duty and its sovereign interest in regulating health facilities in the interest of protecting the health and safety of both women in abortion clinics and all people in other healthcare facilities, which would be inhibited by the scope of this claim. Ms. Murrell, I've heard you talk about frontal assault, kitchen sink, paralyzing, the cost of it all. What makes ordinary appeal an inadequate means of relief? I mean, federal courts handle complex, mammoth, colossally big cases every day. What makes appeal an inadequate means of relief? Your Honor, I think that very paralyzing effect and chilling, so there's two things. First of all, I think the paralyzing effect and the invasion of state sovereign interests are different from, for example, the N. Ray Dupuy orthopedics case that certainly involved a large number of cases, but it didn't involve an invasion of state sovereign interests. It did not involve paralyzing state officers from being able to carry out their duties. So I think that is a significantly different reason that would justify mandamus in this case and would prevent ordinary relief, because I believe that that is the purpose of this suit, is to paralyze the state from being able to regulate. I mean, the scope of this claim is so enormous, and by looking at count one and count five and the scope of those claims and looking at the relief that they request, I mean, they are essentially asking the federal court to place the state under continuing federal jurisdiction. I mean, that's an astonishingly unusual claim, so I think the novelty of the claim also is something that justifies mandamus, and it makes this case different from a case where we might be able to remedy the problem on appeal. We cannot remedy those issues. The district court has not placed the state under continuing jurisdiction as of yet, has not. But I think that on the front end, and I would point this court to the Cheney decision and the recent Trump decision in Ray Trump, where the court, and certainly that's a, I mean, those are different. It's federal executive separation of powers, but I don't think that that is necessarily different from an invasion of state sovereignty. So that is, I mean, I would compare this to that, where the court said that mandamus is appropriate to protect the state from vexatious litigation that distracts state officers from performing their constitutional duties, and this is exactly that kind of litigation. So it is... What cases can you cite where a district court denied a motion to dismiss and an appellate court granted mandamus relief against that decision? The Cheney decision, for starters. The Trump decision, both of those cases. This court in J.P. Morgan and DuPuy Orthopedics stepped back from actually granting mandamus, but still gave some direction to the court in terms of the proper application of the law. I mean, we... That would serve a similar purpose as long as the court understands that he didn't apply, that there is no claim for cumulative effects, and that with regard to counts two and three, you have to... He must actually apply basic, roulette, Twombly ball pleading standards to each and every claim that they make so that the state can actually know. I mean, the district court even acknowledged that some of these laws were constitutional, and so that just takes them right back. I mean, that kind of... It's like Quicksilver. It dovetails right back into a cumulative effects claim, and if there is no cumulative effects claim, then it has infected his entire evaluation of counts two and three. So I think that this court certainly has some decisions, fairly recent decisions, where it stopped short of actually granting mandamus. I would point out that this is the amended complaint. It's not the original complaint, and I think that they've had one opportunity to cure the He's doubled down on the original ruling and said that Hellerstedt didn't require them to do that. He thinks the claim exists, and I think that is the ultimate source of the problem. With regard to counts two and counts three, I think that if this court directed the court to apply the law because he didn't do so, I mean, that seems a fairly fundamental thing for a court to do. I mean, I don't think that it is shocking or surprising or unusual for a court to have to apply ordinary Iqbal and Twombly requirements. He does it virtually. We have other cases against the state that are pending before these courts, and so I think the same pleading standards apply. The plaintiffs need to identify what in each of these statutes they object to and what the harm is that is caused to them by these statutes, and we pointed to this in our brief, and it just, I think, illustrates the absurdity of the scope of these claims when it encompasses a requirement that says that they need to use sterile instruments or wash hands or have hot and cold water that mixes together. I mean, those are pretty ordinary requirements, and if you read the statutes, they are not singled out. They are just very similar to virtually every regulatory regime in the entire code on every health care facility, and the department regulates over 30 health care facilities, including adult daycares, including child daycares. I mean, there are a wide scope of facilities that they hospice, long-term care facilities. I mean, many of these facilities don't do surgical procedures, but they do treat a large number of people who may or may have vulnerable circumstances, and so they encompass an entire regulatory regime that ensures that there are basic sanitary proceeds. I mean, that's one of the regulations at issue here. It's a regulation that requires them to follow the sanitary code. You know, I mean, I really don't see how that can be burdensome, and they need to demonstrate how it is burdensome if it is. So that goes right to Twombly and ITBAL, and they basically were given a free pass on counts two and three, and so if we, that would accomplish a great deal if counts one and five were dismissed and counts two and three were actually pleaded properly. Your Honor, one point that I would also like to make is that I understand we recognize that discovery orders are not ordinarily something that would necessarily justify mandamus, and that here there actually has not been one yet, but I mean, we're at the point where everything will flow from here. Discovery certainly will begin, had already started and has been paused, but mandamus can issue when there's extraordinary circumstances to forbid discovery of irrelevant information, and with the scope of claims one and five, there is no doubt, I mean, just taking back to, as I said before, looking at counts one and five at those two places in the amended complaint, there's no doubt that this will involve an extremely invasive amount of discovery, and the Mississippi. With respect to discovery, the only thing that I've seen in our court is the first request for production of documents from the plaintiffs. I recognize that both that's been superseded, so there's a stay of discovery, apparently, in the district court. Is this, are the supplemental discovery requests or the second request, whatever, supersedes the one that's in front of us, are those in the record somewhere, and I just don't have them? No, Your Honor, I think they're in the lower court record, they're not in the record attached. The only discovery requests I think that were in the record were attached to our, the Fifth Circuit petition for mandamus were attached to our petition, that's the first set, and they have pulled back somewhat on those, but I don't think there's anything that prevents them from just asserting the same request, and number six and number eight in that request in our petition I think are particularly telling, I see no reason why they can't simply reissue those requests in the same manner that they did in that set, and they actually ask for documents going all the way back to 2001 for all licensed health care facilities. That is an enormous request. Have they asked, do you have a protective order from the district court for the executive and legislative privilege associated with the development, drafting, and amendment of the laws and regulations? No, the only protective order, the only thing the protective order covers right now is confidential information, the anonymity of private information that might expose someone to the doctor's names and plaintiff's names, and the court obviously can adapt protective orders to protect against some of those things and can narrow discovery, but that doesn't solve the problem of exposing the state to the invasion of its sovereign interest to begin with. I mean, it is the invasion of the state's sovereign interest that is the harm that cannot be remedied on appeal, and that should not be permitted when there is no legal claim. I mean, at best, what they have is a novel claim, which the courts have also said is appropriate for mandamus when it is a novel claim that is likely to be carried out, and we already have six very, very similar cases. There's one in Arizona. There's three in this circuit. There's one in Arizona. There's one in Indiana. There's a state court suit, I think, in another state, but this is a test. These are test cases, and so, you know, I mean, I think that the state, the invasion of the state's sovereign interest carry an enormous amount of weight when what they are trying to do is assert a claim that has no comparative for, I mean, no comparison under any, certainly not any abortion precedent, and I will, before I... You've exceeded your time. Oh, I'm sorry. You said time for a vote. Yes.  May it please the court, Heather Gebelin-Hacker for the states of Texas and Mississippi as amici curiae. I want to jump right in because I only have a few minutes today, and I want to answer your question, Judge Willett, about the precedent for mandamus proceedings in 12B6 cases. In this court, there was the case Enri Burzynski, which is 989F2nd733 in the First Circuit, in an opinion written by then-Judge Breyer, Enri, Justices of the Supreme Court of Puerto Rico, 695F2nd17. In the Eighth Circuit, Enri Kemp, 894F3rd900, and as General Merle mentioned, in the Fourth Circuit, Enri Trump, the Emoluments Clause case, 928F3rd360. I want to focus in on the wider impact of this case and the harms to the other states, and I think that answers the question both of why mandamus is particularly appropriate here and also why normal appellate review is not an adequate remedy. This is not just a run-of-the-mill case involving a corporation that doesn't want to pay for discovery. What we have here is our claims requesting that a federal court take down or take over a state regulatory system regarding abortion. So this is particularly appropriate for mandamus relief, both in exercising the court's supervisory power, confining the district court to proper jurisdiction, and also because it intrudes on a delicate area of federal-state relations, regulating the practice of medicine as one of the inherent police powers of the state. But beyond that, the errors committed by the district court in this case have the potential to be repeated in another pending case in Louisiana, plus pending cases in Texas and Mississippi, before appellate review can recur, because district courts in Texas and Mississippi may look to this district court opinion as persuasive authority. And this court has found that normal appellate review is inadequate under that circumstance where the case won't go back up on review where there are other pending cases. So for example, Henry Lloyd's Register, another case where the court noted the impact on other cases is Henry Volkswagen. Now, yes, the costs of litigating these cases are going to be enormous. Dollar-wise, I mean, this is going to involve years of discovery, months of trial. Those costs are not just borne by one litigant, but they're going to be borne by Louisiana twice for the two cases pending there, and every other state in this circuit. This is not just a regular case. Moreover, the costs are especially excessive when you consider that with these sweeping claims, it's going to be extremely difficult for the district court to distill the case down to its essence, for the district court to identify a few discrete issues or questions the court is trying to answer to focus discovery and to focus the trial process. And the state defending these claims will have to spend significant resources re-defending laws that have already been held constitutional, because that's the essence of the cumulative effect claim that they're bringing here. They're asking the court to strike down constitutional laws, which the court has no authority to do. It's ridiculous to require the states to have to hire experts, for example, to prove that sterilizing instruments is beneficial. That's what they'll have to do under the district court's opinion. Now I want to make one final point, and that is, if for some reason the court disagrees that all of the elements for mandamus are met, and to be clear, we think they have been met here, and that it is appropriate, but if you disagree, at a minimum, the court should do what it just did a few months ago in Re J.P. Morgan. In that case, and that's 916 F. 3rd 494, in that case, the court in the published opinion analyzes the correctness of the district court opinion, and while it ultimately denied mandamus, the court remanded the case to the district court for reconsideration in light of the court's opinion. The amici states do urge the court to grant the mandamus petition and prevent the tremendous waste of taxpayer and judicial resources that could occur in every state in this circuit if the district court's erroneous decision is permitted to stand, but at minimum, the amici states urge the court to say what the law is, give guidance to the district courts adjudicating these claims, and remand for reconsideration, just as it did in J.P. Morgan a couple of months ago, and in the numerous cases cited in note 24 of that opinion. Thank you. Good morning, your honors. Shannon Sullivan of Debevoise and Plimpton for the plaintiffs. Your honors, the only question before this panel today is how far it is willing to go to bypass the ordinary rules of civil and appellate procedure to create a fast track for merits review in abortion cases. That's exactly one of my questions, is how we apply the federal rules of civil procedure to the complaint. Can we start, I want to make sure I understand exactly what the plaintiffs are challenging. So I see a list, for example, on page 59 of the complaint, the series of regulations. There's not the regulation included here that governs sterile instruments. So are the plaintiffs challenging the state requirement of the use of sterile instruments? Your honor, the plaintiffs are challenging the 26 specifically identified statutes and regulations set forth in the complaint. The state's concern that you heard from Ms. Merrill earlier today, that we are somehow challenging the entirety of the law or every ability to enact any kind of regulation is simply not consistent with the factual allegations of the complaint, which must be read in its entirety in the light most favorable to plaintiffs. The only regulations and statutes... I'm sorry, I'm just trying to understand. I don't see the number, so I'm asking, is that included or is it not included? Is the regulation of sterile instruments included? No, your honor. I don't believe that is among the statutes included, but... 4423, 4425, 445. Exactly, your honor. They are called out by name and number throughout the complaint. And your honor, the Fifth Circuit shouldn't be in the business of reviewing the factual allegations of a complaint after the denial of a motion to dismiss. Well, one of my questions is the district court doesn't seem to address the standing of the plaintiffs to challenge those regulations. The district court says the standing arguments seem compelling on their face, but it would be untenable to address them at this time. So obviously one of the core uses of mandamus is to ensure the lawful exercise of jurisdiction, so that's what I'm trying to understand. For example, when we talk about 4445, which we just discussed, apparently is part of the challenge in this complaint, that includes things like regulations of physical space. So is the plaintiff in this case, June Medical, doing business as hoped? Is it in the same physical space that it was when it was constructed in 1980? Your honor, the plaintiffs in this case have standing to bring the claims that they brought, and let me tell you two things about that. First of all, defendants didn't raise certain of the standing challenges that they seek to raise here before the district court, and it's not fair to hold the district court responsible for things the defendants didn't raise. Second of all, your honor, the plaintiffs can comply with statutes and still challenge them. That's Dole v. Bolton, and there is certainly standing to try to comply with regulations, but to challenge the constitutionality of those laws and regulations. Counsel, is the plaintiff in the same physical space that it was in 1980 when it started construction? Or started operation, I'm sorry. Your honor, the plaintiff is in the same physical space that it has been in while complying with these laws and regulations, but that is in no way preclusive of its ability to challenge these laws and regulations, and in no way is that an appropriate exercise of this court's mandamus review to reach out and airlift out of the district court a decision denying a motion to dismiss for some kind of fast-track appellate review on the merits of standing claims, on the merits of the pleadings. That is not a job for this panel. Counsel, you started with the federal rules of civil procedure, and I'm just trying to understand how the federal rules of civil procedure apply to the complaint that you filed in federal court. So you've challenged section 4445 on the basis of a plaintiff that has been in its same physical space since 1980. So in 4445, the provision you're challenging, it says, the outpatient abortion facility shall be designed, constructed, equipped, and maintained to protect the health and safety of patients, personnel, and the public at all times. And so my question is, how do the federal rules of civil procedure that you referenced in your opening, as interpreted by Iqbal and Twombly, apply to a plaintiff who is complying with this provision? How does this provision injure you, or could it ever injure you? And when I say injure, I mean injure in fact in the constitutional Article 3 sense. Your Honor, Rule 8 certainly applies to the claim, and Rule 8, as you well know, and as the panel well knows, is a notice pleading standard, as are Iqbal and Twombly. So what does a plaintiff have to plead to satisfy Rule 8, to satisfy Iqbal, to satisfy Twombly? It has to plead facts, not detailed facts. This is not a securities fraud case. This is not a Rule 9b case. This is a Rule 8 pleading case. So it must plead facts, and those facts must be read by the court in the light most favorable to plaintiffs, and inferences drawn in plaintiffs' favor. And the Fifth Circuit is particularly clear that motions to dismiss are looked on with disfavor and rarely granted. And on those facts, the plaintiff has to plead facts that say that the laws as enacted and applied by the state, which we have alleged here in the many, many other paragraphs of the complaint that are in the body of the complaint and not just in the causes of action, that the physical space requirements enacted by the state of Louisiana do nothing to advance the health of women in that state and do impose burdens on providers of reproductive care that make it more costly, difficult, and expensive to provide. I understand the argument on the merits. My question is on the injury in fact requirement of Article 3. How can you be injured in fact by a provision that you already complied with prior to its implementation and that cannot apply since the building has already been constructed? Your Honor, that's Doe v. Bolton. Doe v. Bolton tells you that I can be injured in fact and continue to be injured in fact and continue to comply with the law and challenge it. And I can challenge it on the basis that many other laws have been challenged, including abortion laws, which is to say that my compliance or the clinic's compliance with that law makes it more costly, burdensome, difficult, and invasive to provide the care, the reproductive care to women that it provides. And that is an injury to the clinic and to the women who are its patients. And that is actually a finding that the district court reached. And I'm sorry, Your Honor, to interrupt, but I think it's important to recognize that contrary to Louisiana's arguments earlier here today, that the district court did enter alternative holdings here. It looked at the cumulative effects, what it called a cumulative effects claim that's not called that in the complaint. But it looked specifically at the statutes and found that that is the burden and the injury that they caused. And what I would say to you, Your Honor, is that it is not the job of the Fifth Circuit to create a fast track to review the district court's denial of a motion to dismiss. It's for the district court to weigh those factual allegations. And having found them sufficient, the next natural step in this case is discovery and appeal in the ordinary course. I understand Doe v. Bolton and the idea that you can comply with a provision and still challenge it. But the reason you can do that is because you would prefer not to comply with the provision because you could do it cheaper, more efficiently, or however, if you weren't complying with the provision. So my question is, would you otherwise not comply with the provision were it not for Louisiana implementing it by law? Your Honor, I... I don't think that that is an issue that is in any way raised by the mandamus petition or here before the Fifth Circuit. The mandamus petition says that there's a standing problem. The district court didn't address the standing problem. And one of the core uses of the cases cited in the brief say of the use of mandamus is to ensure that jurisdiction exercised by federal courts is done so lawfully. And so I'm just asking, how are we supposed to understand each of the provisions challenged in the complaint and the injuries that it imposes on the plaintiffs? Your Honor, I think that you understand and the panel should understand with respect to that provision and each of the other 25 statutes and regulations challenged in the complaint that plaintiffs are not required to plead with particularity exactly the... you know, what would happen the moment that particular statute is struck down. Would the clinic immediately move? Would it change its physical space? That is not an allegation that needs to be in the complaint to satisfy Rule 8. What Rule 8 requires, what Iqbal requires, what Twombly requires, what the district court found, and what this court should not airlift out of the district court to review is sufficient facts to give these defendants notice of the claims and you can see that defendants understand the claims against them. They can look at the complaint. They know that these claims are challenges to the overall... to the statute in Count 1 and to the 26 individual statutes and regulations specified in Count 2 and 3 of the complaint. What the exact effect of each statute and what the appropriate relief is for the district court to enter is a question for a later day and for the district court that claims that this is going to be paralyzing, that clinics will move, that the state will not be able to appropriately regulate. Those are questions about the scope of relief and we are not here after an injunction. And I'm not asking questions about the scope of relief and I apologize for anything that I said that may have been unclear. I'm asking a threshold question. We are obligated as federal courts in the Supreme Court of the United States and Article 3 of the Constitution to ensure injury in fact traceable to actions of the defendant redressable by a remedy of the federal court. And my question is simply how does the requirements about physical space, how do the requirements about toilet facilities and hot and cold water, how do these things injure the plaintiff? Your Honor, they injure the plaintiff by increasing the cost and burden that the plaintiff must undertake in order to provide the services that it provides. They make it more difficult, more costly, more expensive to provide reproductive care to the women in the state of Louisiana. That is the injury and that is an ongoing injury. To continue to comply with the physical requirements requires cost, it requires time, it requires effort. Okay, so this is an as-applied challenge? Yes, Your Honor. And so the relief you seek is what? That you don't have to provide hot and cold water? That you can move into a space of any size you want? I mean, what is the, what relief would you be asking from the district court? Your Honor, the relief that we're seeking from the district court is injunctive relief. And it's injunctive relief To do what? That's my point. I can move into a five-by-five space or a ten-by-ten. I don't have to have hot water. What is it? Tell us what, what relief did you expect the district court could grant injunctive relief? Your Honor, the relief that we expect the district court to grant at the end of the day, which we have not reached, and after which it would be appropriate for the Fifth Circuit to review, but we're not there yet. The relief that we seek is injunctive relief preventing the unconstitutional enforcement and application of laws that treat abortion care and the women who seek to receive it differently from every other form of reproductive care or other similarly safe medical intervention in the state of Louisiana. As we allege in detail in the campaign, abortion is extremely safe, it is much safer than many other medical procedures for which these kinds of regulations do not apply and there is no reason, no fact that would require this level of intervention or regulation. So yes, plaintiffs are seeking an injunction against the unconstitutional application and enforcement of a large number of laws in Louisiana because there are a large number of laws in Louisiana that treat abortion providers and their patients unconstitutionally and impose undue burdens. That is not a question for the 5th Circuit to answer today and the 5th Circuit should not reach out and airlift this case out of discovery, out of district court, out of the supervision of the magistrate judge when it comes down to discovery and create a fast track for appellate review on the merits. I understand that these are questions that are important to this court, they're important to the state of Louisiana, they're important to the state of Texas whose motions to dismiss have not been decided, they're important to the state of Mississippi which didn't make a motion to dismiss, they're important to my client, the clinic, the doctors and to the women they serve. These are important questions and nobody is denying that. What we dispute is that mandamus is a fast track to appellate review on the merits of a particular set of cases, abortion cases involving women and their doctors. That is not what mandamus is for. Mandamus is an extraordinary writ, not a ticket to the fast lane and that is not how it should be used. Are all of the provisions challenged in the complaint different than those that would apply to other medical providers? Yes, your honor, I believe so. All of the provisions that we have identified in the complaint are statutes and regulations that the state of Louisiana has enacted and applied to providers at outpatient abortion facilities and not other providers of similarly safe medical care. So if you go to the dentist or go get a colonoscopy or have many, many other kinds of reproductive care, you go to your OBGYN and you need one of the many kinds of more invasive procedures that an OBGYN might provide, they are not subject to these kinds of regulations. So here's one. The National Human Trafficking Center Resource Hotline. Each outpatient abortion facility shall post information regarding the National Human Trafficking Resource Center Hotline. So I take it you're probably complying with that today and I take it from what we were talking about earlier that your view is you don't need to prove that you would take the signs down. You just need to say this is different than what would apply to another doctor's office. Do other doctor's offices not have to apply, not to have to post the hotline in their offices? They do in Texas, I think. They may in Texas, Your Honor. I don't know what the rule is in Texas, but I do know that when you distinguish between one kind of business from another with no rational basis, when you distinguish between an abortion clinic and an OBGYN with no basis for the distinction that one must post that and the other must not, that's count five. Well, that's my question. Is that true? Is in Louisiana do other providers not need to post the hotline number? Your Honor, I'm not familiar with every regulation in the state of Louisiana that governs every other form of medical care, but I will tell you that each of these statutes and regulations singles out outpatient abortion providers for regulatory requirements that are not imposed on other similarly safe medical interventions and that there is no rational basis for that and that's what's alleged in the complaint. I'm not going to add allegations, factual allegations today. I will stand on the allegations of the complaint and I believe that the state of Louisiana that excludes abortion providers and their patients from every other similarly safe form of medical care in the state of Louisiana that is the fundamental issue raised by the complaint and the extent to which the state    not able to address this issue properly and we just don't know that. That's a question for discovery and it's true. This case should go to discovery and discovery may be broad and discovery may take a while and it may involve costs and you have heard today the state complaining about the cost of discovery they are concerned about the amount of time that discovery takes they are concerned about the time cost and burden of discovery. Why do you need discovery to figure out what regulations and statutes apply to other businesses or procedures? I was alluding to the purpose that is we have alleged in the complaint that the state of Louisiana and the Department of Health single out abortion providers to impose regulations for no purpose other than to make it hard. Why do you need discovery to canvass the statutes and regulations that are challenged in the complaint? The intent behind those is the subject of discovery. Would you get to intent if they are uniformly applied to other similar businesses if you put it in procedures? Your Honor, we've alleged that they are not uniformly applied. That's the factual allegation of the complaint. To the extent that the state has a disagreement with the factual allegations of the statutes and regulations that apply to abortion providers are different from and more onerous than the statutes and regulations that apply to other providers of similarly safe medical interventions. If the court has a question about that difference and the state has a dispute about that difference that's a fact dispute. That is a question for summary judgment. That is a question for  judgment. I can't give you that answer because we haven't been through that process. Right now I can just stand on the factual allegations of my complaint. That's what the district court looked at. That's what this court I would say should look at but this court shouldn't look at it at all. It is not the job of the Fifth Circuit Court of Appeals to intervene in a district court litigation because defendants are concerned about the cost and burden of discovery or the relief that plaintiffs might get ultimately at the end of the day. There is a risk of loss or because they might get relief they don't want. The risk of loss is something on every defendant's mind after losing a motion to dismiss  their district court. There shouldn't be a fast track for abortion cases to bypass that process and come straight to the Fifth Circuit for merits review on what was fundamentally the denial of a motion to dismiss. There's no  that the district court recognized that Rule 8 applies, that he applied them. The defendants don't like that application. That happens all the time, but it is not a basis for mandamus. Can you show me where he applied them? I'm intrigued. If he did, I'd like to see it. I'm looking on pages 14 and 15 which is where you would think he would apply it because he's talking about the defendant's standing arguments. And he says, in a vacuum these arguments appear persuasive. However, to take on each regulation individually and separately to show injury and fact traceability and causation would place the plaintiffs in an untenable position where they're forced to challenge facially valid regulations. I don't see the discussion there. I think if you look at the bottom of page 15 to page 16 where the district court is looking at the individual statutes. He has already articulated and clearly understands the pleading standards. I don't think there's any dispute there. But again, even if the district court doesn't have the capacity to explain or fast track for the state to bring to the courts of appeals cases involving abortion and there shouldn't be. So in the ordinary 12B6 case, obviously the successful plaintiff who goes on to discovery doesn't get discovery into, for example, documents that would be subject to executive or legislative privilege regarding the purpose of the drafting of the statutes or the constitution. Because as a lawyer, I can tell you that no defendant thinks their documents should get disclosed to the other side. The district court and magistrate judge supervise that all the time. They handle issues of the utmost sensitivity and enter appropriate protective orders. There are ways to manage discovery that district courts and magistrate judges use every day. That's where those issues should be in the first instance, not here. Federal rules don't carve out plaintiffs or cases by category. One of the great promises of the federal rules and of the federal process is that any litigant can come to court and if they can state their claim and give notice of it, they will be heard. And that they come into the court and  of it. The rules don't promise an injunction. They don't promise that we'll get what we want at the end of the day. But what the rules do promise and what the court should promise is process. And that's what plaintiffs are asking for here. The federal rules promise a fair process for the redress of grievances. They promise an opportunity to be heard. And they apply to all litigants with no fast tracks, no express lanes, no free passes, no airlifts out of a discovery. And that process matters and this court should follow that process here. It should deny the petition for the writ of mandamus. It should do so summarily without giving defendants the advisory opinion that they are clearly seeking. It shouldn't bypass the ordinary rules and fair procedures to create a fast track for   cases. We respectfully request that the petition be summarily denied. Thank you, Your Honors. Briefly, Your Honor, I would like to hit on just a couple of points. So, first of all, to the point, the kind of closing point that my colleague made about an advisory opinion, we're not asking for an advisory opinion. We're asking this court to exercise its authority that's been clearly recognized to grant mandamus where allowing the court's conduct of trials outside of its jurisdictional limits harms the plaintiffs and the defendants, especially when the defendants are states. And that is, I think, a very, very important thing. I take issue with my colleague's point that this court can't airlift a claim out of district court. Certainly, it can do that. Mandamus is the vehicle to do that. And while it is an extraordinary remedy, and we have recognized and acknowledged the limits on the scope of that remedy, that is the only remedy that we have where the harms cannot be addressed any other way. So I think you can airlift that. Do you agree that they have alleged that similar regulations and statutes do not apply to other similar procedures, or as they put it, businesses? Your Honor, what I would do is I would point you to the regulatory regime that's embodied in the statutes, in the black-letter law. And you can see, just from going through a perusal of the entirety of those statutes, and I do have a list of all the different kinds of facilities that LDH regulates. I mean, it's an enormous number. Ninety percent of those statutes, you can just read them and see that they are not treated differently. So that's not just a factual allegation. It's a legal allegation. When you make a claim and see that they are treated exactly the same, then that is not an allegation that deserves to be treated as true. You can file a summary judgment on that, can't you? Well, Your Honor, we filed, in our motion to dismiss, we challenged both 12B1 and 12B6 motions, and I think most of our argument here is related to jurisdictional limits and standing, and applying proper standing requirements when you are challenging individual rights. Back to my question, do you agree they have alleged that similar statutes do not apply to similar procedures? They use the word business, whatever that means. Do you agree that  is not true? But I don't think that, I mean, abortion clinics are subject to a licensing regime, okay, I mean, there are other entities that are of lesser and greater medical invasiveness that also are subjected to licensing regimes, and so I don't think that that is a statement of fact. I think that is a conclusion, and conclusions of law and fact are also not entitled to be treated as true. Only factual allegations under 1286, under the Rule 8 pleading, are required to be treated as true at the motion to dismiss claim stage. So I think that is a defect in a significant number of their allegations where they make conclusory statements that are conclusions of law and fact, they're ultimate conclusions for this case. They're not factual allegations, and if they had to tease those out and properly follow pleading standards, and I think that really goes more to our claim with regard to counts 2 and 3, because that's where they tried to come in and list the statutes and say, okay, we did it. I mean, that's not enough, and it's not enough to just make grand conclusory statements that are actually ultimate conclusions of law and fact,  I think that's where they tried to come in and list the statutes and say, okay,  it. I mean, that's not enough, and it's not enough to just make grand conclusory statements that are actually ultimate conclusions of law and fact, and I think that that's               statements that are actually ultimate conclusions of law and fact, I think that's where they tried to come in and list the statutes and say, okay, that's not  and it's not enough to just    are actually        tried to come in and list the statutes and say, okay, that's not enough, and it's not enough to just make grand conclusory                that's not enough, and it's not enough to just list the statutes and say, okay, that's not enough, and it's not enough to just